IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ADEKUNLE RAZAQ ADEFEYINTI,

Plaintiff,

v.

DR. JAMES REED and MICHAEL CARR,

Defendants.

OPINION and ORDER

08-cv-426-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this civil action for monetary relief brought pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), plaintiff Adekunle Razaq Adefeyinti contends that defendants James Reed and Michael Carr exhibited deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Specifically, plaintiff alleges that defendants Reed and Carr failed to properly treat his lung disease and as a result, he developed permanent lung damage, chronic chest pain and a chronic ulcer. Presently before the court is defendants' motion for summary judgment.

Before turning to defendants' motion, a preliminary procedural matter requires attention. Plaintiff received instructions on how to file submissions related to summary

judgment. Procedure to be Followed on Motions for Summary Judgment and Helpful Tips to Filing a Summary Judgment Motion in Cases Assigned to Judge Barbara B. Crabb, attached to pretrial conference order, dkt. #24. As explained in the instructions, a party opposing summary judgment must file a brief with opposing legal arguments, a response to the movant's proposed findings of fact and evidentiary materials to support the factual propositions. Procedure, II.A.1-3. Each fact must be proposed in a separate paragraph and supported by a reference to supporting evidence. Procedure, II.D.1-2. Plaintiff failed to comply with these procedural rules. He did not file a brief with opposing legal arguments or supporting evidentiary materials. He did respond to defendants' proposed findings of fact. In disputing defendants' facts, plaintiff sometimes stated an alternative version of the event, but often denied facts without offering his own version. Plaintiff's response referred occasionally to a previous affidavit plaintiff submitted on February 9, 2009, dkt. #28, but several of his facts do not cite any evidence in the record.

Plaintiff's failure to follow the procedural rules could be grounds for disregarding any submissions he made in opposition to defendants' motion for summary judgment. However, it is apparent that, as a pro se litigant, plaintiff may have misunderstood the rules, and a pro se litigant's non-compliance with local rules should not deprive him of a "fair shake." Dale v. Poston, 548 F.3d 563, 568 (7th Cir. 2008). Therefore, I have considered plaintiff's amended response to defendants' proposed findings of fact in which he properly responded

to a fact and referred to admissible evidence in the record to establish that the fact was in dispute. Defendants will suffer no prejudice if I consider plaintiff's submissions because, even considering plaintiff's affidavit and amended response, he has not adduced sufficient facts to defeat defendants' motion for summary judgment. Although defendants will not prevail on their affirmative defense that plaintiff failed to exhaust his administrative remedies, defendants' motion summary for judgment will be granted on the merits because plaintiff has not offered evidence to support his claim that defendants were deliberately indifferent to his serious medical needs.

From the parties' proposed findings of fact and the record, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. Parties

Plaintiff Adekunle Razaq Adefeyinti was incarcerated at the Federal Correctional Institution in Oxford, Wisconsin from January 29, 2007 until February 5, 2008. During that time, defendant James Reed was the clinical director and defendant Michael Carr was the Health Services Administrator.

### B. Plaintiff's Medical Treatment at Oxford

On January 29, 2007, before his admittance to Oxford, plaintiff received an initial medical screening at the Metropolitan Correctional Center in Chicago. According to Federal Bureau of Prisons policy, the initial screening is intended to identify an inmate's medical needs before he is transferred to a new detention facility. During this screening, plaintiff stated that he had tested positive for tuberculosis in the past. His medical records show that he received a probable tuberculosis diagnosis in 2004. The transfer sheet did not indicate that plaintiff had any other significant medical history or medical needs and it did not show that he was taking any prescription medication.

Upon arrival at Oxford, plaintiff received another medical screening. When a nurse asked him to identify any significant medical history or current medical complaints, he reported that he had a history of shortness of breath. He did not indicate that he was taking any medicine or that he needed any. At the conclusion of the intake screening, he was designated as "Care Level 1," which means that the inmate is generally healthy and has no current medical needs. Because he was designated Care Level 1, he was scheduled for a routine physical exam with a physician's assistant and was not scheduled for any follow-up with the Clinical Director, defendant Reed.

Plaintiff had a physical examination by a physician's assistant on February 1, 2007. Because of his prior positive tuberculosis test, he was given a chest x-ray in addition to a series of routine blood tests. The blood tests were normal and did not indicate tuberculosis.

The chest x-ray was negative for acute, active or significant cardiovascular, pulmonary or bony disease.

On March 1, 2007, plaintiff made his first sick call request, complaining of pain in his right lung. He reported having suffered from shortness of breath since 2004. On March 2, he was examined by a physician's assistant, who noted that plaintiff's vital signs were stable and that his oxygen saturation was good. The physician's assistant ordered a chest x-ray and referred plaintiff to defendant Reed for follow-up.

Defendant Reed saw plaintiff on May 3, 2007. Plaintiff presented medical records to Reed, including a 2006 report in which a doctor declared plaintiff to be a "complicated therapeutic problem, requiring the skills of specialists in the field, and a prognostic problem because of the likelihood of serious cardiac problems . . ." During the appointment, plaintiff complained of shortness of breath. Reed examined plaintiff and noted that he was not in acute distress, his vital signs were stable, his lungs were clear and a recent x-ray was normal. Reed made a diagnosis of dyspnea on exertion, but indicated no specific treatment. However, he requested a pulmonology consultation for further evaluation of plaintiff's complaints. The request for outside consultation had to be approved by Oxford's Utilization Review Committee, so Reed presented the request at the committee's next meeting on June 13, 2007. The request was approved and assigned a priority level 3, which meant that the appointment would be scheduled within three to six months. Staff told plaintiff that the

appointment was scheduled but did not tell him the date of the appointment. (For security reasons, inmates are not usually told of the date scheduled for an outside medical consultation.)

On May 24, 2007, plaintiff submitted a sick call request complaining of severe chest pain that he rated ten on a scale of one to ten. He noted that he had been experiencing this problem since November 2004, and had last experienced this pain three days earlier. Defendant Carr saw plaintiff immediately, but did not observe any signs of acute distress and noted that plaintiff's vital signs were stable. Because plaintiff did not indicate that he was presently experiencing pain, Carr scheduled him for a follow-up appointment with a physician's assistant.

On June 5, 2007, plaintiff saw a physician's assistant, who noted plaintiff's complaint of shortness of breath and intermittent chest pain, but also noted that plaintiff's vital signs were stable, his lungs were clear and his oxygen saturation was good. The physician's assistant could not find any objective cause for plaintiff's complaints and ordered an electrocardiogram test for further evaluation.

On July 1, 2007, a staff nurse administered an electrocardiogram test. The nurse noted that plaintiff was not experiencing chest pain at the time, but had experienced pain two days earlier. The test results were abnormal, which could indicate "pericarditis or injury." (Plaintiff alleges that the nurse told him the results were "very bad and dangerous.")

The nurse notified defendant Reed of the abnormal results and plaintiff's complaints of chest pain. Reed reviewed the results and concluded that they did not indicate that plaintiff's chest pains were cardiac in nature or that plaintiff was suffering from an acute or worsening condition that would require treatment. To evaluate plaintiff's continued complaint of chest pain, Reed ordered another electrocardiogram test and chest x-ray. The electrocardiogram test was administered on July 11. Again, the results were abnormal, indicating "possible ectopic atrial bradycardia, pericarditis or injury." After reviewing the results, Reed gave plaintiff one month of sedentary duty. The chest x-ray was taken on August 1. The results were unchanged from the x-ray of February 2007, which was negative for acute, active or significant cardiovascular, pulmonary or bony disease.

Plaintiff was seen by a physician's assistant on August 2, 2007. During this appointment, plaintiff complained of abdominal pain that got worse after meals. The physician's assistant ordered a test for helicobacter pylori, a common bacteria that causes stomach problems, and a series of tests directed at the upper gastrointestinal area.

On August 3, 2007, plaintiff appeared at sick call stating that he had been experiencing severe chest pain. Before he could even fill out the sick call form, he was seen by defendant Carr. To further evaluate plaintiff's complaints, Carr conducted an electrocardiogram test. The results were "borderline," indicating "ST elevation" probably due to "early repolarization." Carr referred plaintiff to a physician's assistant for immediate

follow-up.

On the morning of Saturday, August 4, 2007, plaintiff arrived at health services with complaints of excruciating pain and nausea. Another electrocardiogram test was conducted, which indicated that plaintiff could be experiencing a heart attack. Defendant Reed was contacted by telephone and immediately authorized staff to transport plaintiff by ambulance to Divine Savior Hospital for evaluation and treatment. Plaintiff was discharged from the hospital later that day with prescriptions for nitroglycerin, baby aspirin and ibuprofen and a recommendation for further outpatient electrocardiogram tests.

On August 10, defendant Reed received test results showing that plaintiff had tested positive for helicobacter pylori infection. Reed told plaintiff of the positive bacteria test, issued a prescription for antibiotics and antacids and told plaintiff that it was important to complete the full cycle of antibiotics. Reed gave plaintiff an indefinite extension of his assignment to sedentary duties.

On August 24, 2007, plaintiff was sent to Divine Savior Hospital for the cardiology consultation stress test that had been recommended after his August 4 visit. Although plaintiff complained of fatigue and shortness of breath during the test, the test did not indicate that these complaints were related to any heart condition or injury. No complaints of chest pain were noted during testing and the test results showed that plaintiff's heart functioned normally under stress.

On September 10, plaintiff submitted a sick call request, complaining of chest pain and shortness of breath. He rated his pain a "six" on a scale of one to ten. On September 11, a gastrointestinal series examination was conducted on plaintiff to assess his complaints of stomach pain that increased after meals. The radiologist determined that plaintiff was experiencing gastroesophageal reflux but the results were otherwise normal. The results of the gastrointestinal series examination ruled out an active ulcer.

On September 12, plaintiff was taken to Divine Savior Hospital for the pulmonology consultation approved in June by the Utilization Review Committee. During the examination, plaintiff reported constant shortness of breath with minimal activity as well as intermittent chest pain lasting a few seconds at a time. Upon examination, the pulmonologist noted that plaintiff's vital signs were normal, that his oxygen saturation was fine and that he was able to speak and move around the room without any evident shortness of breath. The pulmonologist further observed that plaintiff's mood and affect were "slightly dramatic." Testing showed mild reductions in lung capacity that were consistent with either a mild impairment or submaximal patient effort. The pulmonologist confirmed defendant Reed's diagnosis of dyspnea of uncertain etiology. Regarding plaintiff's shortness of breath, the pulmonologist's report suggested that plaintiff may have mild asthma and suggested that an inhaler be prescribed on a trial basis. The pulmonologist further noted that plaintiff's pain was likely a result of his illness in 2004 and that "there would not be any specific

treatment for this." Pursuant to the pulmonologist's recommendation, an inhaler was prescribed for plaintiff. (Plaintiff alleges that the pulmonologist told him that his lung condition was "very bad and dangerous," and that the "only solution to [his] lung illness was surgery." Even if I could overlook the fact that plaintiff's testimony is inadmissible hearsay, plaintiff provides no foundation for the opinions he attributes to the pulmonologist. Therefore, I must disregard these statements).

On January 17, 2008, plaintiff made a sick call request complaining of chest pain and shortness of breath. He requested and received a refill for his inhaler. In a follow-up visit with a physician's assistant, plaintiff complained that his lung condition was getting worse. Plaintiff received a second inhaler and a chest x-ray was ordered. The chest x-ray was taken on January 31 and was negative for acute, active or significant cardiovascular, bony or pulmonary disease.

C. Administrative Grievances

On April 11, 2007, plaintiff filed a BP-8 informal grievance form. He complained that he had been suffering from chest pain and shortness of breath since his tuberculosis and pleural effusion diagnosis in December 11, 2004, that he had made several requests with the medical staff and had been "promised to be see[n] but there was no answer." Plaintiff did not mention defendant Reed in the complaint. Defendant Carr first learned of plaintiff's

medical complaints upon reading the BP-8 grievance. A correctional counselor responded to the grievance on May 3, pointing out that plaintiff's evaluations and x-rays in February and March showed negative results for lung disease. He told plaintiff to use sick call procedures if his symptoms returned.

Oxford's administrative remedy coordinator received a BP-9 grievance form from plaintiff on May 8, 2007. Plaintiff complained he had received a diagnosis of tuberculosis and pleural effusion plus fungal infection in his right lung, and that he had provided defendants Reed and Carr with a doctor's report stating that he was "a complicated therapeutic problem requiring the skills of specialists" and "a prognostic problem because of the likelihood of serious cardiac problem of active pericarditis." Prison officials responded on May 22, 2007, advising plaintiff that defendant Reed had submitted a consultation request for further diagnostic testing that would be presented for approval at the next Utilization Review Committee Meeting. Plaintiff was told to sign up for sick call if his condition changed or worsened.

On June 6, 2007, plaintiff sent a BP-10 to the Bureau of Prison Regional office. He stated that he had been complaining of worsening pain since February 13, 2007, and that he had not been given medical care. He further stated that he had been promised to be seen in response to his BP-8 complaints, "but there was no answer" and that defendant Reed had promised on May 4 that he would be taken to the hospital for a lung x-ray, but he was still

waiting.

A Bureau of Prison regional director responded on July 4 by explaining that a review of plaintiff's records showed that health services staff had been responsive to his medical needs, that further diagnostic testing had been scheduled and that the date for testing could not be revealed to him. Plaintiff was again told to sign up for sick call if his condition changed or got worse.

On July 9, 2007, plaintiff submitted a BP-11 grievance, in which he complained that he had been suffering chest pain and shortness of breath, had "not been given medical attention" and his "condition was getting worse." He submitted an accompanying affidavit stating that "[t]here was nothing done" in response to his complaints of pain and his prior administrative grievances. A Bureau of Prison official responded to the BP-11 on September 25, explaining that the outside diagnostic tests and consultations conducted on August 4 and September 12 showed that plaintiff's heart and lungs were within normal limits, that he had possible pleuritic pain from adhesions for which no specific treatment was recommended and that an inhaler had been prescribed to treat unexplained dyspnea. Plaintiff responded to the September 25 letter by sending a letter to the Bureau of Prison's Office of General Counsel on October 18, 2007. In his letter, plaintiff explained that he had received inadequate treatment for his serious lung condition. The Administrative Remedies Coordinator responded to plaintiff on November 2 with a form stating: "Central Office Administrative

Remedy Appeal responses are the final agency position. If you are dissatisfied with the response, you may pursue any legal recourse you deem appropriate." Plaintiff did not file any further grievances regarding actions or inactions by defendant Reed or Carr.

## OPINION

### A. Summary Judgment Standard

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the court must view all facts and draw all inferences in the light most favorable to the non-moving party. Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003). However, the non-moving party may not simply rest on its allegations; rather, it must come forward with specific facts that would support a jury's verdict in its favor. Van Diest Supply Co. v. Shelby County State Bank, 425 F.3d 437, 439 (7th Cir. 2005).

### B. Exhaustion of Administrative Remedies

Defendants contend that plaintiff has not exhausted his administrative remedies as to all his claims. Under 42 U.S.C. § 1997e(a), a prisoner may not bring a Bivens action such as this one "until such administrative remedies as are available are exhausted." Failure to

exhaust is an affirmative defense that defendants have the burden of pleading and proving. Jones v. Bock, 549 U.S. 199, 216 (2007); Walker v. Thompson, 288 F.3d 1005, 1009 (7th Cir. 2002). Once defendants raise failure to exhaust as a defense, district courts lack discretion to decide claims on the merits unless the exhaustion requirements have been satisfied. Woodford v. Ngo, 548 U.S. 81, 83-4 (2006); Dixon v. Page, 291 F.3d 485, 488 (7th Cir. 2002).

Generally, to comply with § 1997e(a), a prisoner must "properly take each step within the administrative process." Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes following instructions for filing the initial grievance, Cannon v. Washington, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, Burrell v. Powers, 431 F.3d 282, 284-85 (7th Cir. 2005), "in the place, and at the time, the prison administrative rules require." Pozo, 286 F.3d at 1025. The purpose of these requirements is to give the prison administrators a fair opportunity to resolve the grievance without litigation. Woodruff, 548 U.S. at 88-89.

Defendants raise two exhaustion arguments. First, defendants argue that plaintiff asserts a claim in his complaint regarding alleged mistreatment of his helicobacter pylori infection that he did not raise during the administrative grievance process. This exhaustion argument is easily set aside. Plaintiff's complaint alleges only mistreatment of his lung condition; the bacterial infection is mentioned only as a resulting harm.

Defendants' second argument is that plaintiff did not exhaust his administrative remedies for any claims concerning medical care he received after seeing the pulmonologist. According to defendants, the grievance process that plaintiff initiated in April 2007 and concluded in July 2007 addressed only plaintiff's desire to see an outside lung specialist and his allegations that defendants were intentionally denying or delaying treatment in the interim. Defendants argue that plaintiff was required to restart the grievance process for any new complaints about mistreatment of his medical condition after plaintiff saw the pulmonologist in September 2007. Defendants acknowledge that when plaintiff sent a letter to the National Inmate Appeals Central Office in October, he raised the issue of further inadequate treatment for his lung condition. However, defendants contend that his letter violated 28 C.F.R. §§ 542.13-15, which prohibit inmates from raising new grievance issues on appeal.

Prisoners must comply with internal grievance procedures such as §§ 542.13-15. However, the bureau waived requiring compliance with these regulations. In response to plaintiff's October letter addressed to the National Inmate Appeals Central Office, the Central Office checked a box on a pre-printed form notifying plaintiff that he had already received a final agency response to his grievances, and that if he was dissatisfied, he could pursue other legal recourse. The administrative remedy coordinator did not, but could have checked an option instructing plaintiff to restart the grievance process because he was raising

new issues that had to be brought to the attention of the institution staff in a separate grievance process. This response relieved plaintiff of any requirement to file a new grievance: when a prison administrator overlooks a prisoner's violation of a grievance requirement "and resolves [the grievance] on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the [prison] and inviting corrective action." Bouman v. Robinson, No. 07-C-367-C, 2008 WL 2595180, *2 (W.D. Wis. June 27, 2008) (citing Riccardo v. Rausch, 375 F.3d 521, 524 (7th Cir. 2004)).

Because defendants have not met their burden of proving that plaintiff failed to exhaust his administrative remedies, I will address their motion for summary judgment directed to the merits of plaintiff's Eighth Amendment claim.

C. Merits of Eight Amendment Claim

The Eighth Amendment prohibits cruel and unusual punishment and requires the government "to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103 (1976). A Bureau of Prisons doctor or administrator violates a prisoner's right to medical care if the official is "deliberately indifferent" to a "serious medical need." Id. at 104-5. A claim of deliberate indifference contains an objective and subjective component. Greeno, 414 F.3d at 652. Plaintiff must establish facts from which it can be inferred that he had an objectively serious medical need and that

defendants Reed and Carr were subjectively aware of his medical need and chose to disregard it. Farmer v. Brennan, 511 U.S. 825, 838 (1994).

For the purposes of this motion I will assume, without deciding, that the evidence is sufficient to demonstrate that plaintiff had a serious medical need during his incarceration at the Federal Correctional Institution at Oxford, Wisconsin. However, taking the evidence in the light most favorable to plaintiff, I conclude that a reasonable trier of fact could not find that either defendant was deliberately indifferent to that need. A prison official is deliberately indifferent if he knows of an excessive risk to inmate health and safety and nonetheless either knowingly or recklessly disregards it. Farmer, 511 U.S. at 837; Hayes, 546 F.3d at 524. Disagreement with a doctor's medical judgment, incorrect diagnosis or improper treatment resulting from negligence or even gross negligence is insufficient to state an Eighth Amendment claim. Gutierrez, 111 F.3d at 1374.

1. Defendant Carr

Plaintiff has not shown that defendant Carr knowingly or recklessly disregarded the substantial risk of harm to plaintiff. On multiple occasions, Carr saw plaintiff promptly in the health services clinic. Carr scheduled plaintiff for follow-up appointments with doctors and physician's assistants when he deemed it necessary. He relied on the diagnoses and medical judgments of Oxford's physician's assistants, nurses and doctors. No reasonable jury

could find from these undisputed facts that Carr's failure to do more was medically inappropriate, let alone sufficiently reckless to amount to deliberate indifference. Johnson v. Snyder, 444 F.3d 579, 586 (7th Cir. 2006) (affirming summary judgment for health care administrator who relied on plaintiff's medical record and doctor's treatment decisions); Johnson v. Doughty, 433 F.3d 1001, 1015 (7th Cir. 2006) (affirming directed verdict for health care administrator who responded appropriately to inmate's complaints of worsening symptoms and relied reasonably on doctor's professional opinions).

2. Defendant Reed

It is undisputed that defendant Reed gave plaintiff medical treatment. When a doctor has provided a prisoner some treatment, the question is whether that treatment is constitutionally adequate. To prove that it is not, a plaintiff must show that the doctor acted with such blatant inappropriateness as to imply that his actions or omissions were not actually based on medical judgment. Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008). The Court of Appeals for the Seventh Circuit has explained that unless medical care evidences "intentional mistreatment likely to seriously aggravate the prisoner's condition," a prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim. Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996).

Plaintiff has provided the court no factual basis for finding that defendant Reed's

medical care was blatantly inappropriate. Although plaintiff contends that Reed should have employed "additional diagnostic techniques" and should have authorized lung surgery for him, he points to no evidence in the record that could establish that Reed's failure to do these things was blatantly inappropriate or far below the general standard of care. Plaintiff's own opinion about what qualifies as appropriate medical treatment is not enough. The undisputed facts show that although Reed was not able to diagnose the source of plaintiff's symptoms, he continuously monitored and responded to plaintiff's condition with examinations, testing, referrals to specialists and medication. During the time plaintiff alleges that he received no medical care, it is undisputed that he was given multiple x-rays and electrocardiogram tests, evaluated on several occasions by physician's assistants, transported by ambulance to the hospital emergency room to evaluate a possible heart condition and treated for a bacterial infection in his stomach. Reed evaluated plaintiff personally and considered his medical history and test results, but could find no objective source for his complaints. Even so, Reed issued plaintiff a medical waiver for sedentary duty, referred him for a consultation with an outside pulmonologist, and prescribed an inhaler after the pulmonologist suggested it might help. Plaintiff was clearly dissatisfied with the diagnosis and treatment offered by Reed, but he has adduced no evidence to show that Reed used anything less than proper medical judgment in providing plaintiff continual care and treatment during his time at Oxford. Accordingly, defendants' motion for summary

judgment must be granted.

ORDER

IT IS ORDERED that:

1. Defendants James Reed's and Michael Carr's motion for summary judgment is GRANTED.

2. The clerk of the court is directed to enter judgment for defendants and close this case.

Entered this 17th day of September, 2009.

BY THE COURT:

/s/

________________________________

BARBARA B. CRABB
District Judge